

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 2 6 2020

JAMES W. McCORMACK, CLERK
BY:_____
DEP CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

---

DEBRA MAYS, JOHNNY SMITH, JR., and THE CHRISTIAN MINISTERIAL ALLIANCE,

　　　　　　　　　　　*Plaintiffs*,

　　v.

JOHN THURSTON, in his official capacity as the Secretary of State of Arkansas, and ASA HUTCHINSON, in his official capacity as the Governor of the State of Arkansas,

　　　　　　　　　　　*Defendants*.

**COMPLAINT**

Civil Case No. _4:20-cv-341-JM_

---

## **INTRODUCTION**

1.　　Plaintiffs Debra Mays, Reverend Johnny Smith, Jr. and the Christian Ministerial Alliance (together, "Plaintiffs") file this Complaint for immediate injunctive and declaratory relief against the Defendant Arkansas Secretary of State John Thurston for failing to take adequate steps to protect the fundamental right to vote ahead of 2020 elections, including the March 31 runoff, in the midst of the unprecedented national and statewide COVID-19 public health crisis.

2.　　The United States and the State of Arkansas are in the throes of an extraordinary state of emergency. COVID-19 is spreading throughout the country, infecting thousands of citizens in communities across the nation, including Arkansas, which has at least 232 confirmed cases of people who have tested positive for COVID-19 and two deaths. Experts estimate that, for every confirmed case, there could be as many as eleven unconfirmed cases of COVID-19. One of the two fatalities in Arkansas resulting from COVID-19 was a 59-year old person, similar in age to Ms. Mays and Rev. Smith. As a result, people across the United States and Arkansas have been advised by the Centers for Disease Control and the Governor to socially distance and remain in

1

This case assigned to District Judge___Moody___
and to Magistrate Judge___Volpe___

their homes. In a communal effort to slow the spread of the disease and save millions of people, the Governor has also closed government offices, schools, and businesses, strongly urged people to limit person-to-person interactions to their family, and to avoid large gatherings. This crisis may persist for months.

3.    As Arkansans continue to socially distance themselves to comply with state and federal rules to ensure their own and the community's safety, many citizens will reasonably determine that they cannot risk their safety and the safety of others by waiting in line to cast their vote in-person on Election Day. Many Arkansas citizens also will reasonably determine that they cannot take on the safety risks of leaving their homes to take the steps required under Arkansas law to obtain and submit an absentee ballot before 7:30 p.m. on Election Day.

4.    Thus, even if citizens are inclined to vote in-person or go in-person to submit their absentee ballots before the 7:30 p.m. Election Day deadline, the State has discouraged them from doing so. Indeed, for many people, the closure or limited hours of government offices, including county clerks, will make it nearly impossible to timely obtain and cast an absentee ballot.

5.    Given these extraordinary circumstances, many Arkansas citizens must rely on absentee voting and other online or remote options to exercise their fundamental right to vote. In Benton County alone for the upcoming March 31 runoff election, over 22,000 absentee ballot applications were sent to voters—a significant increase over prior years.

6.    Secretary Thurston has taken some steps to address this exceptional situation ahead of the March 31, 2020 runoff election. He has stated that "[a]ll Arkansans who are eligible to vote in [the] runoff election are eligible to cast an absentee ballot"; and that, if a voter cannot mail, fax, or email an absentee ballot application by March 24th, then the voter "may request one in person or through a designated bearer from your county clerk" by March 30th. Press Release, *Important*

2

*Election Update: Early Voting for General Primary Runoff Election Begins Tuesday, March 24th*, Mar. 18, 2020.[1]

7.      In addition, on March 20, 2020, the Governor issued Executive Order No. 20-08.[2] The Executive Order suspended the current March 24, 2020 deadline for absentee ballot applications to be submitted by email, fax, or mail. Ark. Code § 7-5-404(a)(3)(A)(ii).

8.      Nonetheless, state officials have not suspended the requirement that election officials receive absentee ballots by 7:30 p.m. on Election Day for the ballots to be counted. *Id.* ("Election Day Receipt Deadline" or the "challenged provision"). That provision poses a direct and severe obstacle to absentee voting.

9.      The challenged provision poses significant risks to voters seeking to exercise their right to vote in the upcoming March 31, 2020 runoff election (or any election that occurs while this crisis continues). The provision will ensure that Plaintiffs and many Arkansas citizens will be unable to vote.

10.     Indeed, without emergency intervention from this Court, thousands of Arkansas voters risk being disenfranchised. Historically, Arkansas voters have voted in-person in large numbers through early voting or on Election Day. In fact, in 2018, only 2.1 percent of people cast mail-in absentee ballots in Arkansas; whereas over half of Arkansas voters used in-person early voting. Most Arkansas voters are therefore unlikely to be familiar with the absentee voting process. And a significant number of mail-in absentee ballots in Arkansas are often rejected because the ballots are not returned by 7:30 p.m. on Election Day or do not meet other absentee voting requirements. In 2018, Arkansas rejected over 7.5 percent of the absentee ballots cast (1,150 of 17,120) and, in 2016, it rejected 5.4 percent of absentee ballots (1,614). Thus, if, for instance, all

---

[1] https://content.govdelivery.com/accounts/ARSOS/bulletins/281e8cf.
[2] https://governor.arkansas.gov/images/uploads/executiveOrders/EO_20-08._.pdf.

3

413,254 Arkansans who voted early at in-person sites in 2018 switched to mail-in absentee voting in the 2020, up to 31,000 voters (7.5 percent) could have their ballots rejected.[3]

11.     Similarly, this year, many Arkansas citizens have not yet applied to vote absentee for the March 31, 2020 runoff election because they anticipated being able to vote in-person. Absent extension of the Election Day Receipt Deadline, the effects of COVID-19 will leave thousands of potential voters who reasonably anticipated voting in-person without an option to participate in the democratic process.

12.     The March 31 Election Day Receipt Deadline is less than a week away. This means that, despite the Governor's extension of the deadline to remotely request an absentee ballot, thousands of voters will not have a reasonable opportunity to request, receive, and then mail their absentee ballot with an assurance that the ballot will arrive in time to be counted. For example, the Governor's order allows a voter to send an email requesting an absentee ballot on Monday, March 30, 2020. But, due to the challenged provision, the voter's only means of guaranteeing that she can both receive and submit the absentee ballot before the Election Day Receipt Deadline would be for the voter to appear in-person to cast that ballot by 7:30 on Election Day.

13.     Further, even voters who have already applied for absentee ballots will have, at most, mere days to receive and mail them, with a significant risk that they will not arrive by the Election Day Receipt Deadline to be counted. In fact, based on information and belief, Arkansas's mail system has already started to slow because of the effects of the coronavirus. As a result, it is highly likely that many absentee ballots will arrive after the Election Day Receipt Deadline due to no fault of the voters. These same impediments to voting will continue for any election that occurs

---

[3] Election Assistance Commission, *Election Administration and Voting Survey Report*, at 28 (2018), available at https://www.eac.gov/sites/default/files/eac_assets/1/6/2018_EAVS_Report.pdf; Election Assistance Commission, *Election Administration and Voting Survey Report*, at 23 (2016), available at https://www.eac.gov/sites/default/files/eac_assets/1/6/2016_EAVS_Comprehensive_Report.pdf.

while this crisis persists.

14.     Plaintiffs file this suit to ensure that Arkansas voters, including the individual Plaintiffs and the Christian Ministerial Alliance's members and constituents, are able to fully exercise their right to vote in the midst of this unprecedented crisis. Plaintiffs seek an emergency injunction from this Court enjoining the Election Day Receipt Deadline, while allowing all ballots postmarked on or before Election Day but received within a minimum of 10 days thereafter to be counted. Any deadlines related to the receipt or perfection of provisional ballots must also be extended to be consistent with the injunction.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this civil action and can grant appropriate relief pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1357; 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. § 1983; and 52 U.S.C. §§ 10301, 10302, 10308(f), and 10310(e).

16.     This Court has personal jurisdiction over Defendants who are located in Arkansas.

17.     Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Arkansas.

## PARTIES

18.     Plaintiff Debra Mays is a Black registered voter over age 55 who resides in Jefferson County, Arkansas. She is eligible to vote in the runoff. Given the developing COVID-19 crisis and the social distancing guidelines issued by the Governor, Ms. Mays desires to vote absentee in the March 31, 2020 runoff election to protect her health and the health of others around her. She has not yet requested an absentee ballot. She has a credible fear that, if she were to appear in-person to vote or to submit an absentee ballot, she would be violating the social distancing guidelines issued by the Governor and that she might contract or unintentionally contribute to the

5

spread of COVID-19. She also reasonably believes that if she requests an absentee ballot today she will be unable to return it in time to meet the March 31 deadline for tabulation

19.     Reverend Johnny Smith, Jr. is a Black registered voter over age 60 who resides in Jefferson County, Arkansas. He is eligible to vote in the runoff. Given the developing COVID-19 crisis and the social distancing guidelines issued by the Governor, Reverend Smith desires to vote absentee in the March 31, 2020 runoff election to protect his health and the health of others around him. He has not yet requested an absentee ballot. He has a credible fear that, if he were to appear in-person to vote or to submit an absentee ballot, he would be acting in violation of the social distancing guidelines issued by the Governor and that he might contract or unintentionally contribute to the spread of COVID-19. He reasonably believes that if he requests an absentee ballot by mail today, he will be unable to return it in time to meet the March 31 deadline for tabulation.

20.     Rev. Smith is the pastor of Shiloh Baptist Church in Jefferson County and brings this action in his individual capacity and as a representative of his church and its membership. Most of the members of his church are Black. Elderly Black registered voters who are members of his church and eligible to vote in the runoff also credibly fear voting in-person in light of the outbreak and the related federal and state directives. If these members do vote absentee, they believe that their mail-in ballots will not arrive before the March 31 deadline for tabulation.

21.     Plaintiff Christian Ministerial Alliance ("Ministerial Alliance") is a non-profit, non-partisan interfaith coalition of religious leaders from Pulaski County and neighboring areas founded in 1968—just three years after Congress' enactment of the Voting Rights Act. It is devoted to furthering racial equality and justice in Arkansas. In furtherance of its mission, has been involved in litigation relating to minority voting rights.

22.     The Ministerial Alliance's membership includes Black and other registered voters

6

in Arkansas who are eligible to vote and wish to vote in the March 31, 2020 runoff election, but who reasonably fear voting in-person or submitting absentee ballots in-person because the members themselves, or their family or friends, are susceptible to serious complications arising from exposure to the COVID-19 coronavirus. In light of these well-founded concerns, the challenged provision will result in the denial or abridgment of their fundamental right to vote. Members of the Ministerial Alliance also face logistical barriers, such as lack of transportation and lower income, that make it more difficult for them to vote under the challenged provision.

23. The Ministerial Alliance also sent a March 24, 2020 letter asking the Secretary to take other steps to address the concerns herein and otherwise secure the election in this crisis.[4] To date, the Secretary has not responded to the letter or addressed all of its concerns.

24. Defendant John Thurston is sued in his official capacity as the Arkansas Secretary of State. He is chief election official of the State of Arkansas. He is charged with administering the challenged provision and doing so in compliance with the U.S. Constitution and federal law. Secretary Thurston also serves as the Chair of the State Board of Election Commissioners. Ark. Code § 7-4-101(b).

25. Defendant Asa Hutchinson is sued in his official capacity as the Governor of the State of Arkansas. Under the Arkansas Constitution, Governor Hutchinson holds the "supreme executive power of th[e] State," Ark. Const. art. VI, § 2, and must "see that the laws are faithfully executed." *Id*. at § 7. In his capacity as Governor, Defendant Hutchinson enforces the challenged provision and doing so in compliance with the U.S. Constitution and federal law. In light of the declared state of emergency, state law also empowers the Governor Hutchinson to issue an order,

---

[4] https://www.naacpldf.org/wp-content/uploads/2020-03-24-Arkansas-re-COVID19-March-runoff-copy-copy-copy-1.pdf

7

like he has with respect to Executive Order No. 20-08, to extend the Election Day Receipt Deadline.

## **FACTUAL ALLEGATIONS**

**Demographics of Arkansas**

26.     According to the 2010 Census, the total population of Arkansas is 2,915,918 people. Of this total population, 77.0 percent are non-Hispanic white and 15.4 percent are non-Hispanic Black.

27.     According to the 2013-2017 American Community Survey (ACS), the total voting-age population of Arkansas is 2,295,846, of whom 1,728,701 are white (75.3 percent), and 345,445 (15.0 percent) are Black.

28.     Because of Arkansas's past and present history of discrimination, socioeconomic disparities remain stark between Black and white Arkansans. For example, according to the ACS, 17.9 percent of Black Arkansans lack a high school 18 diploma, while 11.7 percent of white Arkansans lack a high school diploma. Further, 23.8 percent of white Arkansans have a bachelor's degree or higher as compared to 14.8 percent of Black Arkansans.

29.     The median household income for Black Arkansans is $30,509, while white Arkansans have a median income of $49,890. The unemployment rate for white Arkansans stands at 2.8 percent, while Black Arkansans face an unemployment rate of 5.2 percent. Twenty-three percent of Black family households in Arkansas live below the poverty level, while only 9 percent of white family households live below the poverty level. Of these households, 57.5 percent of Black families rent their homes, while only 28.7 percent of white families rent housing units. Further, 15 percent of Black families lack a vehicle in their home, while only 4.6 percent of white families lack a vehicle. Of people age 16 to 64, 16.5 percent of Black people and 13.3 percent of

8

white people age lack health insurance. Black people (25.5 percent) are more likely to work in service (blue collar) jobs than white people (14.9 percent). White people (35.9 percent) are more likely to hold managerial or professional (white collar) jobs than Black people (24.8 percent). The Black population in Arkansas has a higher percentage of persons with a disability than white people – 18.4% of the 18-64 Black population has a disability, compared to 15.3% of white people; 48.6% of the 65 and over Black population is disabled, compared to 41.4% of the white population.

30.    According to the ACS, there are similar racial disparities in the particular counties and cities that are holding runoff elections on March 31, 2020. For example, Jefferson County is 40.6 percent white and 56.4 percent Black. Black people in Jefferson County also bear the effects of past discrimination insofar as: 17.2 percent of Black people, but only 11.7% of white people have less than a high school degree; 26.6 percent of Black family households, but only 9.8 percent of white families live below the poverty line in the last year; 14.2 percent of Black households income, but only 6.3 percent of white households income were under $10,000 last year; Black median family income was $39,002 versus white median family income of $65,740; 23.5 percent of Black people and 14.6 percent of whites work in blue collar jobs; 23.8 percent of Black people and 32.7 percent of white people hold white collar jobs; and the unemployment rate for Black people age 16 to 64 (11.9 percent) is nearly double that of white people (6.3 percent).

31.    The data concerning unemployment and income is from before the outbreak of the COVID-19 pandemic. The pandemic is already leading to substantial layoffs and is widely expected to result in a severe economic recession.

**Relevant Provisions of Arkansas Law**

32.    Arkansas law provides that requests for absentee ballots made by mail, fax or electronically "must be received in the office of the county clerk of the county of residence of the

9

voter not later than seven (7) days before the election for which the application was made." Ark. Code § 7-5-404(a)(3)(A)(ii). For the March 31, 2020 runoff election, however, the Governor is permitting voters to make remote requests for absentee ballots after the March 24 deadline.

33.     Once a voter has received and completed their absentee ballot, she or he must ensure that it is "received in the office of the county clerk of the county of residence of the voter not later than 7:30 p.m. on election day." Ark. Code § 7-5-411(a)(1)(A).

34.     Neither the Secretary, nor the Governor have suspended or extended the Election Day Receipt Deadline in response to the COVID-19 crisis.

**Coronavirus and the March 31, 2020 Election**

35.     Over the course of the last few weeks, and with dramatically increased intensity over just the last week, COVID-19 has been spreading throughout the United States, infecting thousands of citizens in communities across the nation, including in Arkansas. Each day more Arkansas residents are infected and, as more is learned about the virus and its potential reach, citizens and state and local governments are forced to take increasingly unprecedented steps to ensure their safety.

36.     Indeed, on March 11, the Governor declared a state of emergency. The Governor has further ordered people to work from home, to minimize personal contact, to avoid large gatherings, and to stay home if they are ill. He has strongly urged everyone to practice social distancing. Public and private schools and certain businesses have been closed indefinitely. Bars, restaurants, and other commercial centers are closing. *See, e.g.,* Proclamation by the Governor of the State of Arkansas, Executive Order No. 20-06, Mar. 17, 2020.[5]

37.     Arkansas voters are now forced to socially distance themselves to try to slow the

---

[5] https://governor.arkansas.gov/images/uploads/executiveOrders/EO_20-06._.pdf

spread of the disease in a communal effort to save their friends, neighbors, and families, with no end in sight. As a result, many Arkansas citizens have reasonably determined that it would risk their safety and the safety of others to cast their vote, or request an absentee ballot, in-person. Moreover, because of the State's quarantine orders, Arkansas citizens who are infected cannot leave their homes, even if they are otherwise willing to venture out to exercise their right to vote. Thus, it is not surprising that Arkansas voters intend to rely on mail-in absentee voting at an unprecedented level. Election officials across Arkansas have seen an increase in absentee ballot requests. *See* Bill Bowden, "Election officials in Arkansas proceed carefully," Arkansas Democrat Gazette, Mar. 22, 2020, https://www.arkansasonline.com/news/2020/mar/22/election-officials-proceed-carefully/.

38. Because of the effects of the Coronavirus, Arkansas's requirement that election officials receive an absentee ballot by 7:30pm on Election Day creates an unreasonable barrier to voting for many citizens.  This requirement is made more onerous in the current pandemic by the facts that mail services may slow because of delays resulting from the COVID-19 crisis. *See, e.g.,* Eric Katz, "With Dozens of Confirmed Coronavirus Cases, USPS Launches New Measures to Protect Employees," *Government Executive*, Mar. 23, 2020.[6]  As a result, many Arkansas citizens will be unable to mail their absentee ballot before the Election Day Receipt Deadline.

39. The Election Receipt Deadline is especially arbitrary because, recognizing the unique circumstances created by the COVID-19 pandemic, the Governor has suspended the March 24 deadline for requesting an absentee ballot. By failing to suspend the Election Receipt Deadline, state officials have rendered the extension of the March 24 deadline meaningless for many voters who will not be able to request, receive, and submit their absentee ballots by mail in order for them

---

[6] https://www.govexec.com/workforce/2020/03/dozens-confirmed-coronavirus-cases-usps-launches-new-measures-protect-employees/164017/

to be counted.

40.     The March 31 runoff election is less than a week away. Accordingly, the increased number of voters receiving absentee ballots will have, at most, mere days to mail them, with a significant risk that they will not arrive by the Election Day Receipt Deadline and thus will not be counted. Indeed, there is a significant risk that county clerks inundated with absentee ballot requests may not even be able to process all such requests by Election Day, much less mail the ballots with sufficient time for voters to return them by Election Day.

41.     The Governor and the Secretary have failed to adequately notify Arkansas voters, including Plaintiffs, of COVID-19 related changes to the absentee voting requirements and procedures. For example, the Secretary of State's website does not mention the Executive Order No. 20-08, which extended the deadline for people to submit absentee ballot applications via email, fax, or mail. As described in paragraph 6 above, the Secretary issued a press release dated March 18. That release includes the March 24 deadline for remotely requesting absentee ballot deadlines. He has not issued a new release or otherwise updated his website. Local officials have also not adequately notified voters about the absentee voting process. For example, the Jefferson County clerk's website contains deadlines and information about the absentee ballot process that are inconsistent with both Executive Order No. 20-08 and the Election Day Receipt Deadline.[7]

42.     In fact, based on information and belief, Arkansas's mail system has already started to slow because of the effects of the Coronavirus. As a result, it is highly likely that many absentee ballots will arrive after the Election Day Receipt Deadline due to no fault of the voters.

43.     The challenged provision poses a significant risk to voters seeking to exercise their right to vote in the upcoming March 31, 2020 election. This provision means that many Arkansas

---

[7] https://www.jeffersoncountyar.gov/plugins/show_image.php?id=177.

citizens will have their absentee ballots discarded.

44.     Without action from this Court, these laws will continue to burden Arkansas voters'
right to vote, disenfranchising them in the upcoming March 31, 2020 election, as well as other
elections taking place during the COVID-19 crisis.

**The Racially Disparate Impact of the Challenged Provision**

45.     Here, Black Arkansans will disproportionately bear the burdens associated with the
Election Day Receipt Deadline.

46.     For example, Black people in Arkansas are less likely to have access to the private
transportation necessary to travel to county clerks' offices to submit their absentee ballots in-
person. Black people in Arkansas are also more likely than white people to lack access to health
insurance and more likely to be disabled. Thus, as national experts and articles confirm,[8] Black
people disproportionately face the threat of devastating health outcomes upon contracting the
COVID 19 coronavirus.

47.     The decisions of individual election officials have also increased the barriers to
voting for Black voters. For example, in Jefferson County, which has disproportionately more
Black voters as compared to the Black voter population in the State as a whole, election officials
have reduced the number of polling sites to lessen the number of poll workers. And officials are
unable to fully staff the county's six polling sites. These facts make it more difficult for Black
people to vote safely in-person and increase the importance of permitting expansive absentee
voting. Jefferson County has also had a large share of the COVID-19 coronavirus infections in
Arkansas.

---

[8] https://www.usnews.com/news/healthiest-communities/articles/2020-03-25/why-black-americans-face-an-uphill-
battle-against-the-coronavirus; https://www.forbes.com/sites/katyafelssmyth/2020/03/17/covid-19-and-health-and-
death-disparities/#2abbd7ec7712.

48.     Nationally, Black voters are less likely than white voters to use mail-in absentee voting. Upon information and belief, in Arkansas, Black voters are also less likely to use mail-in absentee voting than white people. Black voters are less likely to be familiar with the process.

### CLAIMS FOR RELIEF

**Count 1: The Challenged Provision Burdens the Fundamental Right to Vote in violation of the First and Fourteenth Amendments (42 U.S.C. § 1983)**

49.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

50.     Under the *Anderson-Burdick* balancing test, a court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the rights under the First and Fourteenth Amendment to the U.S. Constitution that the plaintiff seeks to vindicate against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *See Burdick v. Takushi,* 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

51.     Unless Plaintiffs are granted the relief requested herein thousands of Arkansas voters' right to vote, including Plaintiffs' members and constituents, will be severely burdened (if not wholly eliminated) in the upcoming March 31, 2020 election.

52.     Because of COVID-19 and the unprecedented social distancing measures that Arkansas citizens have to take to slow the spread of the virus and to ensure their safety as well as the safety of their friends, families, and neighbors, many Arkansas voters who would have voted in-person will no long be able to do so.

53.     As absentee balloting becomes the only safe way to vote, Arkansas voters are at a high risk of not receiving their ballots with sufficient time to mail them into the county clerk's

14

office so that they are received prior to the Election Day Receipt Deadline. This will lead to disenfranchisement.

54.     The State cannot provide any colorable justification as to why absentee ballots received after 7:30pm on Election Day should not be counted in light of this unprecedented crisis. Indeed, depending on the elected office at issue, state law gives election officials between 15 and 19 days after Election Day to certify the election results. Ark. Code. §§ 7-5-701(a)(4), (c)(1). State law also currently gives voters until the Monday after Election Day (April 6) to perfect their provisional ballots. Ark. Code. § 7-5-308(f)(2)(A).

55.     The challenged provision is not supported by a state interest that is sufficient to justify the resulting burdens on the right to vote, and thus, it violates the First and Fourteenth Amendments.

### Count 2: The Challenged Provision results in the Denial of Procedural Due Process under the Fourteenth Amendment (42 U.S.C. § 1983)

56.     Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

57.     The Due Process Clause of the United States Constitution prohibits the states from depriving "any person of . . . liberty . . . without due process of law." U.S. CONST. amend. XIV, § 1. Which protections are due in a given case requires a careful analysis of the importance of the rights and the other interests at stake. See *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976); *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1192 (9th Cir. 2015). Courts must first consider "the nature of the interest that will be affected" by the government's action as well as the "degree of potential deprivation that may be created" by existing procedures. *Nozzi*, 806 F. 3d at 1192–93. Second, "courts must consider the 'fairness and reliability' of the existing procedures and the 'probable value, if any, of additional procedural safeguards.'" *Id.* at 1193 (quoting *Mathews*, 424

15

U.S. at 343). Finally, courts must consider "the public interest, which 'includes the administrative burden and other societal costs that would be associated with' additional or substitute procedures. *Id.* (quoting *Mathews*, 424 U.S. at 347). Overall, "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334, (quotation and citation omitted).

58.     The Election Day Receipt Deadline must comport with due process. *See Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990). "Such due process is not provided when the election procedures [for voting by mail]" do not adequately protect the right to vote or ensure that an "individual is not continually and repeatedly denied so fundamental a right." *Id.; see also Saucedo v. Gardner*, 335 F. Supp. 3d 202, 217 (D.N.H. 2018) ("Having induced voters to vote by absentee ballot, the State must provide adequate process to ensure that voters' ballots are fairly considered and, if eligible, counted."). When an election process reaches the point of patent and fundamental unfairness, there is a due process violation.

59.     Under the current circumstances, there is little question that Arkansas's election process is fundamentally unfair. The nature of the interest at stake in this case—the right to vote and to have that vote count—is the most precious liberty interest of all because it is preservative of all other basic civil and political rights.

60.     But the challenged provision threatens to deprive voters of this right in the upcoming election. Given the unprecedented situation at hand, Arkansas must establish adequate procedures to ensure that voters have a reliable, fair, effective and safe method to cast their ballots in the March 31, 2020 election.

61.     Because the challenged provision is markedly inadequate in all of these respects, and substitute procedures are readily available to protect voters' rights with minimal burden to the

State, the challenged law violates Arkansas voters' procedural due process rights.

### Count 3: The Challenged Provision Violates
### Section 2 of the Voting Rights Act (52 U.S.C. § 10301)

62.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

63.    Section 2 of the Voting Rights Act prohibits vote denial: the use of voting laws, policies, or practices, like absentee ballot procedures and qualifications, that deny, abridge, or otherwise limit Black voter access or increase the burden for Black people to exercise the right to vote. 52 U.S.C. §10301. Discriminatory intent is not required to prove a Section 2 violation.

64.    Section 2 requires a "totality of the circumstances" analysis to prove that Plaintiffs and other Black voters "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b).

65.    Under the totality of circumstances, the challenged provision has the result of denying or abridging the rights of Plaintiffs in that Black voters have less opportunity than white voters in the State of Arkansas to participate in the political process and elect representatives of their choice in violation of Section 2. 52 U.S.C. § 10301.

66.    Black voters bear the effects of past and present racial discrimination in Arkansas.

67.    For example, the State of Arkansas has a thoroughly documented and judicially recognized history of official racial discrimination against Black voters, racially polarized voting in state and local elections, and unresponsiveness to the needs of Black voters. *See, e.g., Taylor v. Howe*, 225 F.3d 993 (8th Cir. 2000); *Harvell v. Blytheville Sch. Dist. No. 5*, 71 F.3d 1382 (8th Cir. 1995) (en banc); *Jeffers v. Clinton*, 740 F. Supp. 585 (E.D. Ark. 1990) (three-judge court).

68.    The State has also erected barriers, like restrictive voter registration and photo identification laws, that have made it harder for Black people and low-income people to register

17

to vote or cast ballots. *See, e.g., Martin v. Kohls*, 444 S.W.3d 844 (Ark. 2014); *Arkansas Cmty. Org. for Reform Now v. Clinton*, No. 84-49, 1987 WL 1557249 (E.D. Ark. Dec. 28, 1987).

69.     Among other racial disparities, the State's history of racial discrimination results in Black voters being poorer and having less access to transportation and less access to health insurance than white voters in Arkansas. Black people in Arkansas are also less economically secure than white people and are more likely to be unemployed and work in blue collar jobs than white people.

70.     As a result of these longstanding disparities, the financial crisis brought about because of the COVID-19 outbreak bears more heavily on African American voters. And, because white people are more likely to have a higher income and to hold white-collar jobs, they are more likely than Black people to be able to work remotely and to weather the current health and financial crisis.

71.     Given the COVID-19 crisis, the challenged provision interacts with this history of discrimination to make it more difficult for Black voters to vote and have their votes counted than white voters in Arkansas.

## **PRAYER FOR RELIEF**

72.     Unless enjoined by this Court, Defendants will continue to violate the Voting Rights Act and the U.S. Constitution by conducting elections under the challenged provisions.

73.     WHEREFORE, Plaintiffs respectfully ask the Court to enter an order:

    a.  Declaring that in the context of the current Coronavirus crisis, the Election Day Receipt Deadline is unconstitutional in violation of the First and Fourteenth Amendments and violates Section 2 of the Voting Rights Act;

    b.  Enjoining Defendants and their respective agents, officers, employees, and

successors, and all persons acting in concert with each or any of them, from rejecting ballots that are postmarked on or before Election Day and arrive at the county clerk's office within a minimum of ten days after Election Day; Ballots that do not have a postmark or other marking from the USPS shall be presumed to have been mailed by Election Day;

a. Ordering Defendants to pay Plaintiffs' costs, expenses, and other reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e); and

b. Ordering any such additional relief as the interests of justice may require.

Respectfully submitted on March 26, 2020,

Sherrilyn Ifill
*President and Director-Counsel*
Leah C. Aden*
Deuel Ross*
Omavi Shukur (Arkansas Bar No. 2016067)
NAACP LEGAL DEFENSE AND
  EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
Phone: (212) 965-2200
Fax: (212) 226-7592
laden@naacpldf.org
dross@naacpldf.org
oshakur@naacpldf.org

*Pro Hac Vice Motions forthcoming*

19